

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
AT DALLAS

U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FILED

MAR - 8 2007

CLERK, U.S. DISTRICT COURT
By _____
         Deputy

DORIS STAEHR, Derivatively On Behalf of
TXU CORPORATION,

        Plaintiff,

vs.

C. JOHN WILDER, MICHAEL W. RANGER,
E. GAIL DE PLANQUE, LELDON E.
ECHOLS, KERNEY LADAY, JACK E.
LITTLE, GERARDO I. LOPEZ, J. E.
OESTERREICHER, LEONARD H.
ROBERTS, GLENN F. TILTON,
KOHLBERG KRAVIS ROBERTS & CO. and
TEXAS PACIFIC GROUP,

        Defendants,

   - and -

TXU CORPORATION, a Texas Corporation,

        Nominal Defendant.

Case No. _____

3 - 0 7 C V 0 4 3 2 - L

Judge _____

## SHAREHOLDER DERIVATIVE COMPLAINT

## INTRODUCTION

1.      This is a shareholder derivative action brought by plaintiff by and on behalf of TXU Corporation ("TXU" or the "Company") alleging breaches of fiduciary duty against certain of TXU's officers and directors, as well as against Kohlberg Kravis Roberts & Co. ("KKR") and Texas Pacific Group ("TPG"). This action stems from certain unlawful actions of the Company's officers and directors, aided and abetted by KKR and TPG, in attempting to complete a management-led buyout ("MBO") of TXU (the "MBO" or the "Proposed Acquisition") at a grossly inadequate and unfair price and pursuant to an unfair process that has been designed to ensure that defendants obtain for themselves TXU's valuable assets and the benefits of its ever-improving financial condition. Defendants' actions in providing preferential treatment to themselves, as well as KKR and TPG, at the expense and to the detriment of the Company is unlawful and constitutes breaches of fiduciary duty on the part of the Defendant officers and directors and/or the aiding and abetting thereof on the part of KKR and TPG.

2.      Company officers and directors, aided and abetted by KKR and TPG, have been, and are still using their superior inside knowledge and position to arrange an MBO of the Company. They executed the Proposed Acquisition prior to February 27, 2007, before the Company announced its Q4 2006 and FY 2006 results, which were scheduled for release on that date. Those financial results have been in the books since December 31, 2006, and Defendants have been privy to those results since that time, unlike the Company's public shareholders. Defendants were aware that the financial results were very favorable to the Company, and would result in an increase in share value. Such an increase in share value would cost TXU's management, KKR and TPG tens, if not hundreds, of millions of dollars more to acquire TXU. Indeed, on February 27, 2007, when the Q4 2006 and FY 2006 financial results were announced, TXU revealed that the Q4 2006 net income had jumped 33% over the same quarter in the previous year. Net income in the fourth quarter of 2006 was

announced at $475 million, or $1.03 per share, up from the net income of $356 million or $0.74 per

share earned in the fourth quarter of 2005. The Company's FY 2006 earnings were equally

impressive. TXU announced that the Company earned $2.55 billion, or $5.46 per share, in 2006, up

from $1.71 billion, or $2.50 per share, earned in 2005. These earnings announcements significantly

increase the value of TXU stock.

3.      KKR and TPG offered certain of the key defendants a combination of equity and

indemnity in the post-acquisition Company because KKR and TPG knew these individuals would

agree to sell the Company at a pre-determined price prior to disclosure of the Company's Q4 2006

and FY 2006 results. As has been widely reported, Company managers including TXU Chief

Executive Officer C. John Wilder ("Wilder") are investing in the MBO along with KKR and TPG.

4.      In pursuing the unlawful plan to sell the Company to management, KKR, TPG and

each of the defendants violated applicable law by directly breaching and/or aiding the other

defendants' breaches of their fiduciary duties of loyalty, candor, due care, independence, good faith

and fair dealing. In essence, the Proposed Acquisition is the product of a hopelessly flawed process

that is designed to ensure the sale of TXU to KKR and TPG, on terms preferential to KKR and TPG

and TXU insiders and to subvert the interests of the Company. Absent judicial intervention, the

Company will be irreparably injured.

## JURISDICTION AND VENUE

5.      This Court has jurisdiction pursuant to 28 U.S.C. §1332(a) (2) in that plaintiff and

defendants are citizens of different states and the matter in controversy exceeds $75,000, exclusive

of interest and costs. This Court has supplemental jurisdiction under 28 U.S.C. §1367.

6.      Venue is proper in this District pursuant to 28 U.S.C. §1391 because nominal

defendant TXU is headquartered in this District and thus a substantial portion of the transactions and

wrongs complained of herein, including the defendant's primary participation in the wrongful acts

detailed herein, occurred in this District. One or more of the defendants either resides in or maintains executive offices in this District.

## PARTIES

7.     Plaintiff Doris Staehr is the owner of shares of TXU common stock and has been the owner of such shares continuously since prior to the wrongs complained of herein. Plaintiff is a citizen of California.

8.     Defendant Wilder is and at all times relevant hereto has been the Chairman of the Board of TXU and its President and Chief Executive Officer. Wilder is a citizen of Texas.

9.     Defendant Michael W. Ranger ("Ranger") is and at all times relevant hereto has been a director of the Company. Ranger is a citizen of New Jersey.

10.     Defendant E. Gail de Planque ("de Planque") was at all times relevant hereto a director of the Company until her resignation on or about March 2, 2007. de Planque is a citizen of Maryland.

11.     Defendant Leldon E. Echols ("Echols") is and at all times relevant hereto has been a director of the Company. Echols is a citizen of Texas.

12.     Defendant Kerney Laday ("Laday") is and at all times relevant hereto has been a director of the Company. Laday is a citizen of Texas.

13.     Defendant Jack E. Little ("Little") is and at all times relevant hereto has been a director of the Company. Little is a citizen of Texas.

14.     Defendant Gerardo I. Lopez ("Lopez") is and at all times relevant hereto has been a director of the Company. Lopez is a citizen of Michigan.

15.     Defendant J. E. Oesterreicher ("Oesterreicher") is and at all times relevant hereto has been a director of the Company. Oesterreicher is a citizen of Michigan.

16.    Defendant Leonard H. Roberts ("Roberts") is and at all times relevant hereto has been a director of the Company.  Roberts is a citizen of Texas.

17.    Defendant Glenn F. Tilton ("Tilton") is and at all times relevant hereto has been a director of the Company.  Tilton is a citizen of Illinois.

18.    Defendant KKR is a private equity firm that is participating in and aiding and abetting the other defendants in their breaches of fiduciary duty in connection the Proposed Acquisition. KKR is headquartered in New York.

19.    Defendant TPG is a private equity firm that is participating in and aiding and abetting the other defendants in their breaches of fiduciary duty in connection the Proposed Acquisition. TPG is headquartered in Texas.

20.    The defendants named above in ¶¶8-17 are sometimes collectively referred to herein as the "Individual Defendants."

21.    The Individual Defendants are in a fiduciary relationship with the Company and the other public stockholders of TXU, and owe them the highest obligations of good faith, fair dealing, due care, loyalty and full, candid and adequate disclosure.

## DEFENDANTS' FIDUCIARY DUTIES

22.    To diligently comply with their fiduciary duties of loyalty and good faith, the directors and/or officers may not take any action that:

(a)    favors themselves or will discourage or inhibit alternative offers to purchase control of the corporation or its assets to the detriment of the Company;

(b)    contractually prohibits them from complying with their fiduciary duties owed to the Company;

- 4 -

(c)      will otherwise adversely affect their duty to search and secure the best value reasonably available under the circumstances and ensuring any potential transaction is in the Company's best interest; and/or

(d)      will provide the directors and/or officers with preferential treatment at the expense of the Company.

23.      In accordance with their duties of loyalty and good faith, the defendants, as directors and/or officers of TXU, are obligated to refrain from:

(a)      participating in any transaction where the directors' or officers' loyalties are divided;

(b)      participating in any transaction where the directors or officers receive, or are entitled to receive, a personal financial benefit at the expense of the Company; and/or

(c)      unjustly enriching themselves at the expense or to the detriment of the Company.

24.      Defendants, separately and together, in connection with the MBO, are knowingly or recklessly violating their fiduciary duties, including their duties of loyalty, good faith and independence owed to the Company, or are aiding and abetting others in violating those duties. The Individual Defendants stand on both sides of the transaction, are engaging in self-dealing and abusing their control of TXU, are obtaining for themselves personal benefits at the expense of the Company. As a result of defendants' self dealing and divided loyalties, the Company is not being treated fairly in connection with the proposed MBO.

25.      Defendants also owe the Company and its stockholders a duty of truthfulness, which includes the disclosure of all material facts concerning the MBO and, particularly, the fairness of the price offered for the stockholders' equity interest. Defendants are knowingly or recklessly breaching

their fiduciary duties of candor and good faith by failing to disclose all material information concerning the MBO, and/or aiding and abetting other defendants' breaches.

26.     Defendants are knowingly or recklessly breaching their duties of loyalty, good faith, independence and candor in connection with the MBO, and/or are aiding and abetting other defendants' breaches, and have the burden of proving the inherent or entire fairness of the MBO, including all aspects of its negotiation, structure, price and terms.

## SUBSTANTIVE ALLEGATIONS

27.     TXU is an energy company with its headquarters in Dallas, Texas which manages a portfolio of energy businesses in Texas. It is a holding company conducting its operations principally through two subsidiaries: TXU Energy Company LLC (TXU Energy Holdings) and TXU Electric Delivery Company (TXU Electric Delivery). TXU Energy Holdings is engaged in electricity generation, residential and business retail electricity sales and wholesale energy market activities which take place largely in Texas. TXU Electric Delivery engages in regulated electricity transmission and distribution operations in Texas. TXU Energy Holdings provides electricity and related services to more than 2.3 million retail electricity customers in Texas, which is more customers than the number served by any other retail electric provider (REP) in the state. TXU Electric Delivery operates the distribution and transmission system of electricity in Texas providing power to over three million electric delivery points over more than 100,000 miles of distribution lines and 14,000 miles of transmission lines.

28.     On November 9, 2006, the Company issued a press release entitled "TXU Reports Third Quarter Results and Maintains Outlook Range." The release detailed the latest in a series of outstanding financial results:

> TXU's third quarter 2006 reported earnings were $1,004 million, $2.15 per share, as compared to net income available to common shareholders of $565 million, $1.16 per share, in the third quarter 2005. Third quarter 2006 reported earnings

- 6 -



included income from discontinued operations of $20 million, $0.04 per share primarily related to anticipated insurance recoveries from the settlement of claims associated with the company's discontinued European operations. Third quarter 2005 reported earnings included a $6 million loss from discontinued operations.

Income from continuing operations was $984 million, $2.11 per share, for third quarter 2006 compared to income from continuing operations of $571 million, $1.17 per share for the comparable prior-year period. Third quarter 2006 income from continuing operations included income of $7 million, $0.01 per share, that is treated as special items and 2005 income from continuing operations included net expenses of $3 million, less than $0.01 per share, that are treated as special items....

TXU's year-to-date 2006 reported earnings were $2,077 million, $4.43 per share, as compared to net income available to common shareholders of $1,356 million, $1.76 per share, for year-to-date 2005. Reported earnings included income from discontinued operations of $81 million, $0.17 per share, for year-to-date 2006, related primarily to a reversal of a TXU Gas income tax reserve due to favorable resolution of an IRS audit matter and the insurance recoveries referenced above. Year-to-date 2005 reported earnings included income from discontinuing operations of $6 million, $0.01 per share.

Income from continuing operations was $1,996 million, $4.26 per share, for year-to-date 2006 compared to $1,350 million, $1.75 per share, after preference stock dividends, for the comparable prior-year period. Year-to-date 2006 income from continuing operations included net expenses of $236 million, $0.50 per share that are treated as special items. Year-to-date 2005 income from continuing operations included income totaling $150 million, $0.31 per share that is treated as special items ....

\*       \*       \*

"Our results for the quarter were solid overall, though mixed in some areas relative to expectations, particularly in our competitive businesses." said C. John Wilder, TXU chairman and CEO. "Operationally, I am very pleased with the continued benefits of the TXU Operating System as evidenced by another quarter of record lignite and nuclear power generation. Those productivity improvements position us well in the base business and in preparation for operating the new generation we're building that Texas so desperately needs. Besides improving the reliability to meet Texas' growing energy demands, we're also empowering the economy. Over the past five years, TXU invested approximately $4.5 billion in Texas, equal to more than 110 percent of our operational earnings. Between 2006 and 2010 we plan to spend in excess of $17 billion more to help secure Texas' energy future. Our long-term hedging program is also performing well. As of November 3, it had protected approximately $950 million in value since its inception late last year. On the other hand, TXU Energy delivered lower-than-planned results largely because consumers implemented efficiency measures in response to prices and warmer weather. We are also beginning to see increased competitive offers and

pricing options. Both factors are signs of a well-functioning, competitive market. To help us gain the lead when the market opens to full competition in January, TXU Energy has introduced a wide array of innovative new pricing options that give North Texas customers real choice about how they buy electricity. They can opt for plans that save over 10 percent and provide long-term price certainty, or they can do nothing and enjoy unmatched three-year price security. In any case, they will receive a $100 appreciation bonus that will result in approximately $165 million of savings to customers. We are providing customers with superior service and a range of choices at very competitive pricing and maintaining the long-term value of the business with indicative net retail margins in a five to 10 percent range. That's low compared to many other retailers and commodity businesses given the volatility of electric power, but sustainable. Despite the mixed performance in some areas, we are on track to deliver 2006 earnings in our outlook range and position the business to meet the urgent and growing needs for power in Texas."

## SELF DEALING

29.     Defendants know that even better financial results are in store for the Company and that TXU's assets and prospects are worth even more than the Company's current stock price reflects. Thus, defendants have timed the proposal to the detriment of the Company.

30.     Defendants have access to internal financial information about TXU which reveals its true value, its expected increase in true value and the benefits of continued ownership of TXU, information to which neither the plaintiff nor other shareholders are privy. Defendants are using this inside information to benefit themselves in this transaction to the detriment of the Company.

31.     Defendants, with the participation and/or acquiescence of the other Individual Defendants, are engaging in self-dealing and are not acting in good faith toward the Company. By reason of the foregoing, defendants have breached and are breaching their fiduciary duties to the Company and/or are aiding and abetting therein.

32.     Indeed, the conflicts of interest and other unfairness that infect deals of this type were highlighted in a September 8, 2006, *Wall Street Journal* article entitled "In Some Deals, Executives Get A Double Payday – Managers Profit When Companies Are Sold to Private-Equity Firms, Then Stay on With Big Options." That article stated:

- 8 -

Private-equity firms have notched seven of the 10 largest leveraged buyouts of all time this year. For the top executives of the target companies, such deals could be the difference between being rich and being very rich.

That is because in many cases the executives are both buying and selling the company. Consider a trio of massive deals: The bids for HCA Inc., Kinder Morgan Inc. and Aramark Corp., valued at more than $40 billion combined, all have involved top executives teaming up with private-equity firms to buy their own companies and to continue running them.

As increasing numbers of executives heed the siren call of private-equity firms, the dynamic pitting shareholders against management is bound to intensify. (Private-equity firms buy companies or divisions using vast amounts of debt and later sell them or bring them public.)

In such cases, management, with all its detailed knowledge of the company, goes from being a seller striving for a high price to being a buyer looking for an attractive price. Usually the sale of a public company involves an auction or a competitive-bidding process. But when management joins the private-equity buyers, there often isn't such an open procedure, and the process is especially fraught with potential conflicts of interest.

"Every private-equity firm markets itself to its potential investors on the basis of its access to deals, preferably exclusive access to deals" without competitive bidding, says Douglas Cifu, a merger-and-acquisition lawyer with Paul, Weiss, Rifkind, Wharton & Garrison LLP. "But when you are a public company, you have a fiduciary obligation to maximize the value of the company."

"The strength of the private-equity firms is their high-powered compensation," says Josh Lerner, a professor at Harvard Business School. "Can it lead to the temptation of being bought out so management can get the pot of gold?"

33.    The article continued:

Managements that team up with private-equity firms typically make buyout offers that are acceptable – though not necessarily blowout deals for shareholders. In fact, a rhythm has developed around the classic management buyouts. Managers make their proposal, and a few months later the two sides agree to a slightly higher new price. In the Aramark deal, the per-share price for Aramark ended up at $33.80, up from the original offer of $32.

While some boards are diligent in vetting deals, the process sometimes is skewed in favor of a sale. For example, there usually is a period when other bidders can come forth with offers. But if that window is short, the likelihood of a rival bid emerging isn't large, since potential buyers won't have time to perform due diligence. Special committees charged with weighing deals also can set breakup fees that make rival bidders pay dearly to get rid of the original buyer.

34. While it is unclear whether a special committee of purportedly independent directors has been formed by the TXU Board to negotiate the Proposed Acquisition, any special committee would be entirely irrelevant as any member would have obvious conflicts of interest, in light of, *inter alia*, their allegiance to the other TXU Board members and, more particularly, to Wilder. Thus, the Proposed Acquisition is both procedurally flawed and unfair.

35. Moreover, the seven week "go shop" clause contemplated by the merger agreement is insufficient. Even in the unlikely event the Company is actually successful in finding another suitor in that time who would be able to complete due-diligence, the Company will have to pay a $375 million termination fee. If Company terminates the merger agreement for any other reason, the termination fee will be an exorbitant $1 billion.

36. Simply put, the aforesaid Proposed Acquisition is in furtherance of an unfair plan by defendants to take the Company private, which, if not enjoined, will result in the improper elimination of TXU as a public corporation that is the product of the defendants' conflicts of interest and breach of fiduciary duties, as described herein.

37. The Company has no adequate remedy at law.

### THE ENTIRE FAIRNESS STANDARD

38. In any situation where company insiders stand on both sides of a challenged transaction, the entire fairness standard is implicated, and the defendants bear the burden of demonstrating the two basic aspects of fair dealing and fair price.

39. The concept of fair dealing embraces questions of when the transaction was timed, how it was initiated, structured, negotiated, disclosed to the directors, and how the approvals of the directors and the stockholders were obtained. The concept of fair price relates to the economic and financial considerations of the proposed merger, including all relevant factors: assets, market value,

earnings, future prospects and any other elements that affect the intrinsic or inherent value of a company's stock.

40. The test for fairness is not a bifurcated one as between fair dealing and price. All aspects of fairness must be examined as a whole since the question is one of *entire* fairness.

41. To demonstrate entire fairness, the defendants must present evidence of the cumulative manner by which they discharged all of their fiduciary duties. An entire fairness analysis then requires the Court to consider carefully how the board of directors discharged all of its fiduciary duties with regard to each aspect of the non-bifurcated components of entire fairness: fair dealing and fair price.

42. The burden of proof may shift to the plaintiff, however, only if defendants can demonstrate an approval of the transaction by a truly independent committee of directors who have real bargaining power that can be exerted in dealings with a majority or controlling shareholder who does not dictate the terms of the merger, or the inclusion of a majority of the minority provision in the merger agreement.

43. Because many of the defendants do, in fact, stand on both sides of the Proposed Acquisition, the burden to prove the entire fairness of the Proposed Acquisition will remain with defendants.

## DERIVATIVE ALLEGATIONS

44. Plaintiff brings this action, pursuant to Rule 23.1 of the Federal Rules of Civil Procedure, derivatively in the right and for the benefit of TXU to redress injuries that have been suffered and are continuing to be suffered by TXU as a direct result of the defendants' violations of law. TXU is named as a nominal party in this derivative action solely in a derivative capacity.

45. Plaintiff is and was an owner of the stock of the Company during times relevant to the Individual Defendants' wrongful conduct alleged herein, and remains a shareholder of TXU.

- 11 -

46.     Plaintiff will adequately and fairly represent the interests of TXU in enforcing and prosecuting its rights, and has retained counsel experienced and competent in litigating complex actions and shareholder litigation.

47.     Pursuant to the Texas Business Corporations Act Article 5.14(c), on February 27, 2007, plaintiff made a demand on the Board to rescind their approval of the Proposed Acquisition. A true and exact copy of plaintiff's demand letter is attached hereto as Exhibit A.   The Company responded to plaintiff's demand letter on February 28, 2007 and refused to rescind their approval of the Proposed Acquisition.  A true and exact copy of the Company's response letter is attached hereto as Exhibit B.

48.     The filing of this action prior to the expiration of the 90 day time period provided by the Texas Business Corporation Act Article 5.14(c)(2) is justified by the urgent circumstances underlying the plaintiff's complaint and demand.  TXU faces irreparable injury if the Proposed Acquisition is closed.  The MBO is currently expected to close in the second half of 2007.  Between now and the time of closing, defendants will attempt to further the Proposed Acquisition, decreasing the ability to return the Company to its position prior to the announcement of the MBO.  Indeed, the Company's credit rating has already been downgraded by one rating agency, and others have threatened to follow suit, due to the debt TXU must assume in order to finance the Proposed Acquisition. The immediate filing of this action to enjoin the MBO and prevent further irreparable harm to the Company is necessary.

### FIRST CAUSE OF ACTION

### Claim for Breach of Fiduciary Duties Against the Individual Defendants

49.     Plaintiff repeats and realleges each allegation set forth herein.

50. The defendants have violated fiduciary duties of care, loyalty, candor and independence owed to the Company and have acted to put their personal interests ahead of the interests of the Company.

51. The Individual Defendants have violated their fiduciary duties without regard to the fairness of the transaction to TXU. Defendants KKR and TPG aided and abetted the other defendants' fiduciary duties to the Company, to the plaintiff, the Company, and to the other holders of TXU stock.

52. As demonstrated by the allegations above, the defendant directors failed to exercise the care required, and breached their duties of loyalty, good faith, candor and independence owed to the Company because, among other reasons:

(a) they failed to properly consider the interests of TXU as a publicly traded company and instead took steps to give the buyout group an unfair advantage, to the detriment of the Company, in the MBO; and

(b) they ignored or did not protect against the numerous conflicts of interest resulting from the directors' own interrelationships or connection with the Proposed Acquisition.

53. By reason of the foregoing acts, practices and course of conduct, the defendants have failed to exercise ordinary care and diligence in the exercise of their fiduciary obligations to the Company and its shareholders.

54. As a result of the actions of defendants, the Company has been and will be irreparably harmed

55. Unless enjoined by this Court, the defendants will continue to breach their fiduciary duties owed to the Company, and may consummate the Proposed Acquisition, which will result in the extinguishment of TXU as a public company, all to the irreparable harm of the Company.

- 13 -

56.    Defendants are engaging in self dealing, are not acting in good faith toward the Company, and have breached and are breaching their fiduciary duties to the Company and its shareholders.

57.    As a result of the defendants' unlawful actions, the Company will be irreparably in that it will be extinguished as a public entity prevented from adapting to an increasingly environmental conscious energy market.  Unless the Proposed Acquisition is enjoined by the Court, the Individual Defendants will continue to knowingly or recklessly and in bad faith breach their fiduciary duties owed to the Company to the irreparable harm of the Company.

58.    The Company has no adequate remedy at law.  Only through the exercise of this Court's equitable powers can the Company be fully protected from the immediate and irreparable injury which defendants' actions threaten to inflict.

## SECOND CAUSE OF ACTION

### Claim for Aiding and Abetting Breaches of Fiduciary Duty Against KKR and TPG

59.    Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

60.    KKR and TPG aided and abetted the Individual Defendants in breaching their fiduciary duties owed to the Company and its shareholders.

61.    The Individual Defendants owed the Company certain fiduciary duties as fully set out herein.

62.    By committing the acts alleged herein, the Individual Defendants breached their fiduciary duties owed to the Company.

63.     KKR and TPG colluded in or aided and abetted the Individual Defendants' breaches of fiduciary duties, and were active and knowing participants in the Individual Defendants' breaches of fiduciary duties owed to the Company.

64.     KKR and TPG participated in the breach of the fiduciary duties by the Individual Defendants for the purpose of advancing their own interests.  KKR and TPG will obtain both direct and indirect benefits from colluding in or aiding and abetting the Individual Defendants' breaches. KKR and TPG will benefit, *inter alia*, from the acquisition of the Company at a grossly inadequate and unfair price if the Proposed Acquisition is consummated to the detriment of the Company.

65.     The Company will be irreparably injured as a direct and proximate result of the aforementioned acts.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff, on behalf of the Company, demands judgment a as follows:

A.      Enjoining defendants, their agents, counsel, employees and all persons acting in concert with them from consummating the Proposed Acquisition unless and until the Company adopts and implements a procedure or process to obtain the highest possible price for shareholders;

B.      Directing the Individual Defendants to exercise their fiduciary duties to obtain a transaction which is in the best interests of the Company and its shareholders;

C.      Rescinding, to the extent already implemented, the Proposed Acquisition and any of the terms thereof;

D.      Imposing a constructive trust, in favor of the Company, upon any benefits improperly received by defendants as a result of their wrongful conduct, including the cost of indemnity agreements and option acceleration, agreed to in the Company stock option grants, which accelerate upon consummation of the Proposed Acquisition;

- 15 -

E.    Awarding the Company the costs and disbursements of this action, including reasonable attorneys' and experts' fees; and

F.    Granting such other and further relief as this Court may deem just and proper.

DATED:  March 8, 2007                    LAW OFFICES OF BALON B. BRADLEY
                                         BALON B. BRADLEY

                                         _____
                                         BALON B. BRADLEY
                                         5473 Blair Road, Suite 100
                                         Dallas, TX 75231
                                         Telephone:  972/991-1582
                                         972/755-0424 (fax)
                                         balonbb@aol.com
                                         SBN: 02821700


                                         BARRETT, JOHNSTON & PARSLEY
                                         GEORGE E. BARRETT
                                         DOUGLAS S. JOHNSTON, JR.
                                         TIMOTHY L. MILES
                                         217 Second Avenue, North
                                         Nashville, TN  37201-1601
                                         Telephone:  615/244-2202
                                         615/252-3798 (fax)
                                         gbarrett@barrettjohnston.com
                                         djohnston@barrettjohnston.com
                                         tmiles@barrettjohnston.com


                                         Attorneys for Plaintiff

- 16 -



EXHIBIT                          A

# BARRETT, JOHNSTON & PARSLEY

## LAW OFFICES

GEORGE E. BARRETT
DOUGLAS S. JOHNSTON, JR *
D. SCOTT PARSLEY
EDMUND L. CAREY, JR.
TIMOTHY L. MILES
GERALD E. MARTIN
MICHAEL K. PARSLEY
LAUREL A. JOHNSTON
DAVID W. GARRISON

217 SECOND AVENUE NORTH
NASHVILLE, TENNESSEE 37201
TELEPHONE: 615-244-2202
FAX NUMBER: 615-252-3798

Writer's email:

Of Counsel
JAMES BRYAN LEWIS

February 27, 2007

**VIA FACSIMILE & FEDERAL EXPRESS
PRIORITY OVERNIGHT
(214) 812-2078**

Board of Directors
c/o C. John Wilder
Chairman of the Board
TXU Corporation
Energy Plaza
1601 Bryan Street
Dallas, Texas 75201-3411

Re: *Demand Letter Pursuant to Texas Business Corporations Act
Article 5.14*

Dear Board of Directors:

We represent Doris Staehr, a shareholder of TXU Corporation ("TXU" or the "Company"). This letter is written pursuant to Article 5.14 of the Texas Business Corporations Act. Our client has serious concerns about the decision by the Board of Directors to approve a management led buyout of TXU by a group of equity firms and TXU insiders, including Texas Pacific Group ("TPG"), Kohlberg Kravis Roberts & Co ("KKR"), Goldman Sachs & Co. ("Goldman Sachs"), GS Capital Partners, Lehman Brothers, Citigroup, Morgan Stanley and TXU Chairman and CEO C. John Wilder ("Wilder") (the "Proposed Buyout"). The Proposed Buyout includes: (i) breaking TXU into three smaller business entities; (ii) assuming enormous amounts of debt; and (iii) agreeing to an exorbitant $1 billion termination fee.

Since 2004, the Company has seen impressive and robust share performance. Indeed, TXU's share price has increased fivefold since February 2004. Despite claims of weakened revenue due to mild winter weather and lost customers, the Company's fourth quarter 2006 earnings jumped 33% from the year-earlier quarter. This success is based in part on TXU's reliance on low-cost coal plants.

---

Board of Directors
c/o Mr. C. John Wilder
Chairman of the Board
Page 2 of 2

The Proposed Buyout, however, will constrain the Company's ability to raise the necessary capital to continue this success. The massive debt taken on by TXU as a result of financing the Proposed Buyout will take resources away from any potential development plans. Indeed, one ratings agency has already downgraded TXU's credit, and others have warned that they might do the same, due to the amount of debt needed to finance the sale of the Company. Moreover, as a private entity, TXU will not have access to capital available in the stock markets.

For these reasons, a management led leveraged buyout is not in the Company's best interest. The only parties that stand to profit from this Proposed Buyout are the insiders and their partners behind the transaction. Because of its fiduciary duties owed to the Company, the TXU Board must withdraw its approval of the Proposed Buyout.

The Board's fiduciary duties obligate its members to refrain from participating in any transaction where a director's loyalties are divided or where a director would receive, or be entitled to receive, a personal financial benefit not shared equally by the public shareholders of the Company. Board members are also obligated to refrain from participating in any transaction where a director would be unjustly enriched at the expense of or detriment to the Company. Finally, the Board is required to ensure that any transaction is in the Company's best interest, which includes the formation of a committee of truly independent and disinterested directors to evaluate any proposed transactions.

Pursuant to the Texas Business Corporations Act Article 5.14, our client demands that the Board withdraw its approval of the Proposed Buyout and any commitments associated therewith. TXU will suffer irreparable injury if the Proposed Buyout proceeds at the expense of enriching TXU insiders and the private equity firms. Due to the imminent and irreparable injury posed by the Proposed Buyout, our client cannot provide the Board with the 90 day waiting period contemplated by Article 5.14. Thus, Ms. Staehr demands that the Board withdraw its approval to the Proposed Buyout by the close of business tomorrow (Central Standard Time). In the absence of such a withdrawal, our client will file an action on TXU's behalf.

We look forward to your prompt response to this urgent matter.

Sincerely,

TIMOTHY L. MILES

TLM/mm



EXHIBIT                    B

**TXU**

Legal
1601 Bryan St, 6th Floor
Dallas TX 75201-3411

**John C. Stewart**
Vice President, Litigation

Tel: 214.812.3722
Fax: 214.812.6032
jstewart@txu.com

February 28, 2007

**VIA FACSIMILE 615.252.3798**
**VIA CM/RRR #7006 2150 0000 4478 9436**
Timothy L. Miles
Barrett, Johnston & Parsley
217 Second Avenue North
Nashville, Tennessee 37201

Re:    Doris Staehr

Dear Mr. Miles:

      Your letter of February 27, 2007 addressed to the Board of Directors of TXU Corp. (the "Board") has been forwarded to me. Accordingly, please direct all further communications to my attention.

      Your letter indicates the intention to file suit against the Board by the close of business today. Under Tex. Bus. Org. Code § 21.553(a) "[a] shareholder may not institute a derivative proceeding until the 91st day after the date a written demand is filed with the corporation stating with particularity the act, omission, or other matter that is the subject of the claim or challenge and requesting that the corporation take suitable action." None of the exceptions to the 90-day waiting period would apply here. Certainly, you have listed no specific matter to support your conclusion that there is any "imminent and irreparable injury" so as to negate the mandatory waiting period.

      Accordingly, your request that TXU's Board withdraw its acceptance of the merger agreement by the close of business today does not conform to the requirements of Tex. Bus. Org. Code § 21.553(a). Your client's attempt to impose an arbitrary deadline on TXU's Board indicates a less than sincere desire to understand the circumstances surrounding the merger agreement and inhibits the Board's opportunity to carefully consider any claims or challenge in compliance with Tex. Bus. Org. Code §21.553(a).

      In addition, your letter does not state "with particularity the act, omission, or other matter that is the subject of the claim or challenge" as required by Tex. Bus. Org. Code § 21.553(a). The fiduciary duties mentioned in your letter are nothing

Mr. Miles
February 28, 2007
Page 2

more than conclusory recitations of general legal principles. Moreover, while the letter makes vague allegations regarding the proposed merger agreement, it does not set forth *with particularity* the factual basis for your client's assertions. Despite that, the Board shall exercise its best efforts to analyze the nature of your client's concerns, and we invite you to describe with particularity any specific breach of fiduciary duty which is the subject of your claim or challenge. In any event, TXU's Board of Directors will respond to your letter within an appropriate time.

Finally, to assist the Board in considering the issues raised in your letter, please provide me with proof of your client's status as a shareholder of TXU, including a copy of your client's stock certificates or brokerage statement and sufficient documentation to confirm the dates whereby she has held her shares.

We look forward to receiving this information.

Sincerely,

John C. Stewart

cc:     David P. Poole,
        Executive Vice President and General Counsel

JS 44
(Rev. 3/99)

ORIGINAL

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

## I. (a) PLAINTIFFS

DORIS STAEHR, Derivatively on Behalf of TXU CORPORATION

## DEFENDANTS

C. JOHN WILDER
(See attachment)

3-07CV0432-L

**(b)** COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF CALIFORNIA
(EXCEPT IN U.S. PLAINTIFF CASES)

COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT Dallas, TX
(IN U.S. PLAINTIFF CASES ONLY)

NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**(c)** ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)
LAW OFFICE OF BALON B. BRADLEY
473 Blair Rd. Suite 100
Dallas TX 75231
972-991-1582 SEE ATTACHMENT

ATTORNEYS (IF KNOWN)
Unknown

RECEIVED
MAR - 8 2007

## II. BASIS OF JURISDICTION (PLACE AN "X" IN ONE BOX ONLY)

- ☐ 1 U.S. Government Plaintiff
- ☐ 3 Federal Question (U.S. Government Not a Party)
- ☐ 2 U.S. Government Defendant
- ☑ 4 Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (PLACE AN "X" IN ONE BOX FOR PLAINTIFF
(For Diversity Cases Only) AND ONE BOX FOR DEFENDANT)

NORTHERN DISTRICT OF TEXAS

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☑ 1 | Incorporated or Principal Place of Business in This State | ☐ 4 | ☑ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT (PLACE AN "X" IN ONE BOX ONLY)

| CONTRACT | TORTS | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | **PERSONAL INJURY** | ☐ 620 Other Food & Drug | | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 362 Personal Injury — Med. Malpractice | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 423 Withdrawal 28 USC 157 | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | ☐ 365 Personal Injury — Product Liability | ☐ 630 Liquor Laws | | ☐ 450 Commerce/ICC Rates/etc. |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 640 R.R. & Truck | **PROPERTY RIGHTS** | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☐ 340 Marine | **PERSONAL PROPERTY** | ☐ 650 Airline Regs. | ☐ 820 Copyrights | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | ☐ 345 Marine Product Liability | ☐ 370 Other Fraud | ☐ 660 Occupational Safety/Health | ☐ 830 Patent | ☐ 810 Selective Service |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 371 Truth in Lending | ☐ 690 Other | ☐ 840 Trademark | ☐ 850 Securities/Commodities/Exchange |
| ☑ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 380 Other Personal Property Damage | **LABOR** | **SOCIAL SECURITY** | ☐ 875 Customer Challenge 12 USC 3410 |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 385 Property Damage Product Liability | ☐ 710 Fair Labor Standards Act | ☐ 861 HIA (1395ff) | ☐ 891 Agricultural Acts |
| ☐ 195 Contract Product Liability | | | ☐ 720 Labor/Mgmt. Relations | ☐ 862 Black Lung (923) | ☐ 892 Economic Stabilization Act |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | | ☐ 863 DIWC/DIWW (405(g)) | ☐ 893 Environmental Matters |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate Sentence | ☐ 730 Labor/Mgmt. Reporting & Disclosure Act | ☐ 864 SSID Title XVI | ☐ 894 Energy Allocation Act |
| ☐ 220 Foreclosure | ☐ 442 Employment | **HABEAS CORPUS:** | ☐ 740 Railway Labor Act | ☐ 865 RSI (405(g)) | ☐ 895 Freedom of Information Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/Accommodations | ☐ 530 General | | **FEDERAL TAX SUITS** | ☐ 900 Appeal of Fee Determination Under Equal Access to Justice |
| ☐ 240 Torts to Land | ☐ 444 Welfare | ☐ 535 Death Penalty | ☐ 790 Other Labor Litigation | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 950 Constitutionality of State Statutes |
| ☐ 245 Tort Product Liability | ☐ 440 Other Civil Rights | ☐ 540 Mandamus & Other | ☐ 791 Empl. Ret. Inc. Security Act | ☐ 871 IRS — Third Party 26 USC 7609 | ☐ 890 Other Statutory Actions |
| ☐ 290 All Other Real Property | | ☐ 550 Civil Rights | | | |
| | | ☐ 555 Prison Condition | | | |

## V. ORIGIN (PLACE AN "X" IN ONE BOX ONLY)

- ☑ 1 Original Proceeding
- ☐ 2 Removed from State Court
- ☐ 3 Remanded from Appellate Court
- ☐ 4 Reinstated or Reopened
- ☐ 5 Transferred from another district (specify)
- ☐ 6 Multidistrict Litigation
- ☐ 7 Appeal to District Judge from Magistrate Judgment

## VI. CAUSE OF ACTION (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE BRIEF STATEMENT OF CAUSE. DO NOT CITE JURISDICTIONAL STATUTES UNLESS DIVERSITY)

This is a shareholder derivative complaint. This is a State Cause of action based in part under the Texas Business Corporation Act. 5.14(c)(2). Also Rule 23.1 FRCP.

## VII. REQUESTED IN COMPLAINT:

CHECK IF THIS IS A **CLASS ACTION**
☐ UNDER F.R.C.P. 23

DEMAND $

CHECK YES only if demanded in complaint:
JURY DEMAND: ☐ YES ☐ NO

## VIII. RELATED CASE(S) (See instructions):
IF ANY

JUDGE

DOCKET NUMBER

DATE 3/8/2007

SIGNATURE OF ATTORNEY OF RECORD
Balon B. Bradley

FOR OFFICE USE ONLY

RECEIPT # _____ AMOUNT _____ APPLYING IFP _____ JUDGE _____ MAG. JUDGE _____

1 (c)

Co-Counsel for Plaintiff

BARRETT, JOHNSTON & PARSLEY
GEORGE E. BARRETT
DOUGLAS S. JOHNSTON, JR.
TIMOTHY L. MILES
217 Second Avenue, North
Nashville, TN 37201-1601
Telephone: 615/244-2202
615/252-3798 (fax)
gbarrett@barrettjohnston.com
djohnston@barrettjohnston.com
tmiles@barrettjohnston.com


DEFENDANTS:
C. JOHN WILDER, MICHAEL W. RANGER,
E. GAIL DE PLANQUE, LELDON E.
ECHOLS, KERNEY LADAY, JACK E.
LITTLE, GERARDO I. LOPEZ, J. E.
OESTERREICHER, LEONARD H.
ROBERTS, GLENN F. TILTON,
KOHLBERG KRAVIS ROBERTS & CO. and
TEXAS PACIFIC GROUP,

Attachment:   Civil Cover Sheet